Jones MASON, Plaintiff,

v.

BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 209, William H. Preheim, Individually and as a member of the Board of Education, U.S.D. 209, Defendants.

No. 89–1065–C.

United States District Court, D. Kansas.

July 5, 1990.

E.L. Lee Kinch of Ratner, Mattox, Ratner, Kinch & Brimer, Wichita, Kan., for plaintiff.

David Steed of Turner & Boisseau, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court for ruling on two dispositive motions. Plaintiff, Jones Mason (Mason), was employed as an

elementary principal and high school counselor at Moscow, Kansas, for Unified School District No. 209 from the spring of 1983 through the spring of 1988. Defendant, the Board of Education, Unified School District No. 209 (Board), did not renew plaintiff's contract for the 1988–1989 school year. Plaintiff brings this civil rights action under 42 U.S.C. § 1983 alleging the Board's nonrenewal of his contract as a teacher violated K.S.A. 72–5436 *et seq.* and thereby denied him of due process.

The Board first has filed a motion for summary judgment (Dk. 21) arguing that plaintiff has post-deprivation remedies under state law which adequately redress him for any denial of procedural due process. Because of these available state remedies, the Board seeks to have plaintiff's § 1983 claim dismissed on the strength of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Board and defendant, William H. Preheim (Preheim), join in the second motion for summary judgment (Dk. 72) arguing that the plaintiff must show the Board's actions were taken as a result of a practice or policy of the Board, that defendant Preheim is entitled to good faith immunity, and that punitive damages can only be recovered against defendant Preheim in his individual capacity. Plaintiff opposes both motions on several grounds.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

■ An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. 477 U.S. at 249. Factual inferences are drawn to favor the existence of triable issues, and where reasonable minds could ultimately reach different conclusions, summary judgment is inappropriate. *See Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476–77 (10th Cir.1990).

■ The movant's initial burden under Fed.R.Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon,* 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

■ The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party's evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon,* 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

■ Procedural due process under the Fourteenth Amendment is triggered when one is deprived of an established property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Property interests are derived and defined from a source other than the Constitution, such as state law. *Id.* at 577, 92 S.Ct. at 2709. What process is due in the taking of a constitutionally protected property interest is a question of constitutional law. *Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 547–48, 105 S.Ct. 1487, 1496–97, 84 L.Ed.2d 494 (1985). Whether a property interest has been conferred is generally a question of state law, while what minimum procedural requirements must be followed before that interest is adversely affected is a question of constitutional law.

■ Considering first the Board's motion (Dk. 21) on the adequacy of post-deprivation state law remedies, the court agrees with plaintiff that the rule from *Parratt* and *Hudson* has been narrowly applied without reaching the situation of an employee's termination. In *Parratt v. Taylor,* an inmate brought a § 1983 suit to recover the value of some hobby materials which he claimed the prison officials negligently lost in handling the receipt of the mail-ordered package. The Supreme Court concluded that no due process violation had been alleged and that state law tort remedies adequately redressed the inmate. The Supreme Court reasoned:

> The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in

almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation.... The prior cases which have excused the prior-hearing requirement have rested in part on the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities.

451 U.S. at 541, 101 S.Ct. at 1916. The Supreme Court extended the reasoning in *Parratt* to an intentional deprivation of an inmate's property. *Hudson v. Palmer,* 468 U.S. at 531–37, 104 S.Ct. at 3202–06. The rationale behind this post-deprivation remedy rule is that it is impracticable, if not impossible, to provide a hearing before the deprivation caused by the random and unauthorized act of a state employee.

If the State is in a position to provide predeprivation process or, stated another way, if it is practicable and possible for the State to conduct a hearing before the property interest is affected, the holdings in *Parratt* and *Hudson* are inapplicable. *Wolfenbarger v. Williams,* 774 F.2d 358, 363 (10th Cir.1985), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986) (It was practicable and possible for the State to provide predeprivation process, since such procedures existed by statute). In the present case, the State is undeniably in a position to provide predeprivation process, since it has done so under the Teachers' Due Process Act, K.S.A. 72–5436, *et seq.,* and the Administrators' Act, K.S.A. 72–5451 *et seq. See Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kansas,* 869 F.2d 555, 557 (10th Cir.1989) (Teachers' Due Process Act satisfies the due process clause), and *Peterson v. Unified School Dist. No. 418,* 724 F.Supp. 829, 834 (D.Kan.1989) (Administrator's Act adequately protects the property interest of school administrators). Consequently, post-deprivation remedies under state law alone do not sufficiently protect the plaintiff's property interest in employment. Moreover, the Supreme Court in *Loudermill* held that some form of prior hearing is necessary before an employee may be terminated. The Court found that the balance favored the employ-

ee's significant interest in retaining "the means of livelihood" and in having the opportunity to present his position on the matter, rather than the State's interest in immediate termination. 470 U.S. at 542–44. For these reasons, the Board's motion for summary judgment (Dk. 21) is denied.

 Going to the second motion for summary judgment (Dk. 72), the defendants are correct that a suit against an official in his or her official capacity is merely another way of pleading an action and imposing liability against the entity of which the officer serves as an agent. *Eastwood v. Dept. of Corrections of State of Okl.*, 846 F.2d 627, 632 (10th Cir.1988). Defendants, however, are mistaken in their argument that the plaintiff must allege and prove that the Board's denial of his due process rights was the result of an existing Board practice or custom, instead of an isolated act or decision. Defendants apparently misapprehend the purpose of the "official policy" requirement first recognized by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986), the Supreme Court explained:

> The "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.
>
> . . . .
>
> With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy. *See, e.g., Owen v. City of Indepen-*

*dence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing). . . .

(underlining added). The defendant Board, being the legislative body vested with the policy making authority, decided itself not to renew plaintiff's contract without affording him the procedural protections under the Teacher's Due Process Act, K.S.A. 72–5436 *et seq.* The defendants' argument essentially challenges a principle that the Supreme Court considered unquestionable back in 1986 and that remains firmly established, and for that reason, the argument is summarily denied as meritless.

Defendant Preheim contends he is entitled to good faith immunity in the suit brought against him in his individual capacity on the grounds that plaintiff's right to the procedures under the Teacher's Due Process Act was not clearly established at the time of the notice of nonrenewal. Because plaintiff had both responsibilities under his contract as an administrator and a teacher and because the Board acted pursuant to the advice of legal counsel, defendant Preheim argues it was unclear then whether plaintiff was also entitled to the process under the Teacher's Due Process Act.

In the 1986–1987 school year, plaintiff's employment was governed by a single contract which described his responsibilities as equally divided between elementary principal and high school counselor. On April 9, 1987, the Board sent two notices of nonrenewal to the plaintiff. Both notices informed him of the Board's intent not to renew his contract for the 1987–1988 school year. While neither notice specifically mentioned a teaching contract or an administrator's contract, one notice referred to his right to procedures under the Administrator's Act, and the other notice specified the reasons for the Board's actions and also outlined the procedures under the Teacher's Due Process Act. At its meeting on April 13, 1987, the Board voted, however, to extend plaintiff's contract another year with his duties now divided 55% as elementary principal and 45% high school

counselor. As in 1986–1987, plaintiff's employment for the 1987–1988 school year was governed by a single contract titled "Principal's Contract for Moscow Public Schools." The 1987–1988 contract specified that plaintiff's responsibilities were divided 60% as principal and 40% as counselor.

By letter mailed April 5, 1988, plaintiff was notified that at its meeting on February 8, 1988, the Board had voted that his "contract of employment as administrator not be renewed for the 1988–1989 school year." The letter detailed plaintiff's right to request a meeting in executive session with the Board at which time the Board would specify the reasons for its decision and the plaintiff would then be given the opportunity to respond. The letter also cited a provision of the Administrator's Act that says neither side shall have the right to have counsel present at this meeting. What the letter does not say is even more critical. It does not mention or refer to the plaintiff's contract of employment as a teacher or to the Teacher's Due Process Act. At the plaintiff's request, a Board meeting was held and the plaintiff was told of the Board's reasons and given the chance to respond. At this meeting, the Board also told plaintiff that his contract for employment as high school counselor was not being renewed and that no additional hearing would be provided him on that action.

Defendant Preheim's understanding of plaintiff's rights could have come from several sources. Preheim recounted the seminars that he had attended on the matter of school law issues and also detailed his knowledge of the Teachers' Due Process Act. The Superintendent of School District, Wayne Comer, testified at his deposition that in regards to the plaintiff's contract he gave the Board the following advice in 1987 and 1988:

I—in order to provide what I felt was the best advice, I called the attorneys in the Kansas State Department of Education Office and visited—visited with them about Mr. Mason's contract being part administrative and part counseling, and I thought—I felt from my background

that his counseling would be tenured as a teacher, and I visited with both gentlemen, and it was their opinion that was true. And I told the board that they would need to be very careful here because he had a split contract, it wasn't all administrative, it was part counseling, and that he would have to be afforded due process under the teacher's due process statute because of the counseling.

(Comer Depo. at 10). In addition, the defendants have submitted the affidavit of the attorney who served the Board from January 1988 through September 1989. The attorney avers that he advised the Board of the procedures controlling plaintiff's nonrenewal and that the Board relied upon his advice. The attorney further opines that plaintiff was not a "teacher" as defined by the Teachers' Due Process Act.

The doctrine of qualified immunity provides that government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official is entitled to qualified immunity for an allegedly unlawful act turns upon the objective legal reasonableness of the act as judged from the legal rules that were clearly established at the time of the act. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Qualified immunity accommodates the exercise of discretion by executive officials without the risk of civil damage liability so long as the officials' actions could reasonably have been thought consistent with the rights allegedly violated. *Id.* at 638, 107 S.Ct. at 3038. This doctrine gives officials the ability " 'reasonably [to] anticipate when their conduct may give rise to liability for damages.' " *Id.* at 646, 107 S.Ct. at 3042 (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)).

■ The burden is with the plaintiff to prove the law was "clearly established."

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). Plaintiff does not satisfy that burden by merely pointing in the abstract to a clearly established right. *Rozek v. Topolnicki*, 865 F.2d 1154, 1157 (10th Cir.1989).

The Supreme Court in *Anderson* observed that the determination of whether the law is clearly established depends to a large extent on what level of generality that the law is being assessed. 483 U.S. at 639, 107 S.Ct. at 3038. The defense of qualified immunity would become a nullity if a plaintiff could satisfy his burden by simply identifying some abstract, but established, right implicated by defendant's act. As a result, the clearly established right must be formulated and "particularized" to the extent that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. *See Hannula v. City of Lakewood*, 907 F.2d 129, 130–31 (10th Cir.1990) (The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited). Even though the unlawfulness of the act need not be the matter of a prior determination, the unlawfulness must be "apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. "Conversely, structuring the inquiry too narrowly 'would render the defense available to all public officials except in those rare cases in which a precedential case existed which was on all fours factually with the case at bar.'" *Melton v. City of Oklahoma City*, 879 F.2d 706, 729 n. 36 (10th Cir.1989) (quoting *Dartland v. Metropolitan Dade County*, 681 F.Supp. 1539, 1546 (S.D.Fla.1988), *rev'd* 866 F.2d 1321 (11th Cir.1989)). Care must be given in construing the involved right so as to balance the need for a concrete right without overly restricting the identifiable presence of the right to only those circumstances previously recognized in case law. *Melton*, 879 F.2d at 729 n. 36. The overriding concern is to formulate the right consistent with the understanding of a reasonable official in those circumstances. If

there remains a legitimate question whether a particularized constitutional right exists under the facts of the case, an official's actions could not have violated clearly established law. *Tyler v. Barton*, 901 F.2d 689, 691 (8th Cir.1990).

■ Plaintiff's other burden under this affirmative defense is to demonstrate how defendants' conduct violated clearly established law. *Rozek*, 865 F.2d at 1157. The defendant must then show that no material issues of fact persist on whether his actions were objectively reasonable considering the law and information that he possessed at the time. *Coen v. Runner*, 854 F.2d 374, 377 (10th Cir.1988). If defendant carries his burden and the plaintiff is unable to present a question of material fact relevant to defendant's claim of qualified immunity, summary judgment in favor of defendant is appropriate. *Id.*

■ Plaintiff broadly characterizes the clearly established right involved as his right to procedural due process in the face of a proposed nonrenewal of his employment contract. In support, he cites the seminal decisions of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiff also points to the deposition testimony of defendant Preheim where he acknowledged that in April 1987 he apparently acted under the belief that plaintiff was entitled to notice in conformance with the Teacher's Due Process Act. From this fact, plaintiff concludes that Preheim was fully aware of plaintiff's due process termination rights under the Teacher's Due Process Act.

Plaintiff's approach skirts two difficult questions. First, when a person is employed under a single contract with responsibilities as both an administrator and a teacher, is it clearly established law that he is entitled to the procedural protections under each of the statutory acts governing those respective positions, even when a majority of the person's time and responsibility is devoted to one of the positions? Second, is it clearly established law that the

notice and hearing procedures provided under the Administrators' Act would not satisfy the constitutional requirement of due process for a teacher facing nonrenewal of his teaching position?

The first issue requires an interpretation of the Kansas Administrator's' Act, K.S.A. 72–5451, *et seq.*, and the Kansas Teachers' Due Process Act, K.S.A. 72–5436 *et seq.* "Teacher" is defined in the Due Process Act as follows:

> [A]ny professional employee who is required to hold a certificate to teach in any school district, and any teacher or instructor in any area vocational-technical school or community college. The term "teacher" does not include within its meaning any supervisors, principals or superintendents or any persons employed under the authority of K.S.A. 72–8202b, and amendments thereto, or any persons employed in an administrative capacity by any area vocational-technical school or community college.

K.S.A. 72–5436(a). While "Administrator" is defined in the other Act as follows:

> [A]ny employee of a board who is required to hold a school administrator's certificate, or who is designated in K.S.A. 72–8202b, or whose position the board determines to be administrative or supervisory in nature with responsibilities and remuneration comparable to those of certified administrators. The term administrator shall not mean or include a superintendent of schools.

K.S.A. 72–5451(b). Neither act addresses or offers guidance on the situation which is involved here—the employee is both an administrator and a teacher under a single contract. It is noteworthy that the statutory definition of "teacher" expressly excludes anyone who is an "administrator," while the statutory definition of "administrator" does not exclude anyone who is a "teacher."

Plaintiff's position is simply that he was a tenured teacher and, therefore, entitled to the procedures of the Due Process Act. In the determination of what statutory procedures govern the nonrenewal of his employment contract, plaintiff believes it is unimportant that a majority of his responsibilities and time under the contract was to be spent as an administrator. Plaintiff's approach does not recognize that the focus is on what a reasonable official in those circumstances would understand to be the law. It is objectively reasonable for an official faced with applying two distinct, and in some ways duplicative, procedural acts for nonrenewal of an employee's contract to believe that compliance with one act is sufficient and to opt for conformance with that act appearing to be most applicable to the employee's circumstances. Plaintiff is correct that the Kansas Supreme Court has found that part-time teachers come within the definition of "teacher." *Schmidt v. U.S.D. No. 497*, 231 Kan. 267, 270–71, 644 P.2d 396 (1982) (Plaintiff's contract was exclusively for a part-time teaching position). This decision, however, is not clear authority for the proposition that a person, serving as a principal and teacher under a single contract with a majority of his assigned responsibilities as an administrator, is a "teacher" covered by the procedures of the Due Process Act. This court does not find that the law was clearly established in April of 1988 that the Teachers' Due Process Act covered the nonrenewal of plaintiff's employment contract.

In addition, it is not a matter of clearly established law that the procedures under the Administrators' Act fall short of providing due process to the plaintiff. In *Peterson v. Unified School Dist. No. 418*, 724 F.Supp. 829, 834 (D.Kan.1989), Judge O'Connor found that the procedures under the Administrators' Act met the due process safeguards enunciated by the Supreme Court in the *Loudermill* decision. The Supreme Court has said:

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. (citations omitted). To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. Of course, the Supreme Court rested its decision in *Loudermill* also on the employee's opportunity for a full post-termination hearing. The different levels of due process protection provided in the respective acts is obvious, and Judge Saffels has found this difference to be reasonable "given that administrators serve as the policy-making arm of a board of education." *Pierce v. Engle,* 726 F.Supp. 1231, 1237 (D.Kan.1989). Plaintiff has not shown it to be clearly established law that only the procedures of the Teachers' Due Process Act meet the constitutional requirement of due process for a teacher's termination and that notice and some opportunity for the teacher to present his side to the Board before termination will not suffice. Officials "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer,* 468 U.S. at 194, 104 S.Ct. at 3019. For all of these reasons, the court finds that defendant Preheim is entitled to summary judgment on the affirmative defense of qualified immunity.

IT IS THEREFORE ORDERED that defendant Board's motion for summary judgment (Dk. 22) is denied;

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Dk. 72) is granted as to defendant Preheim and denied as to defendant Board.