**Dennis SNYDER, Plaintiff,**

v.

**CITY OF TOPEKA, Defendant.**

**No. 93–4238–SAC.**

United States District Court, D. Kansas.

March 6, 1995.

claims against the City of Topeka as he viewed them as duplicative of his Title VII claims.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiff.

David D. Plinsky, Linda P. Jeffrey, Office of the City Atty., City of Topeka, H. Neil Roach, Municipal Court, City of Topeka, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant City of Topeka's (City) motion for summary judgment. (Dk. 33). The plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging he was demoted twice and eventually terminated in retaliation for reporting and speaking about two other city employees' mishandling of public funds. The plaintiff also claims his termination violated his right to procedural due process and to equal protection under the law. The City moves for summary judgment on all of the plaintiff's claims. Having read the parties' memoranda and having researched independently the relevant legal issues, the court concludes that the City's arguments for summary judgment are insufficiently developed and lack either a legal or factual basis on which to prevail.

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The court views the evidence and draws any possible inferences in the light most favorable to the non-moving party. *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1117 (10th Cir.1991). A summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## FACTS

After seven years as a full-time employee with the Topeka Parks and Recreation Department, the plaintiff, Dennis Snyder, was promoted in 1989 to Operations Manager of the Recreation Division. With the promotion, the plaintiff received supervisory duties over a number of employees, including Curtis Pitts and Nate Wilkins. Pitts was the Eastlawn Community Center Director, and Wilkins was a Facility District Supervisor. Pitts and Wilkins are both black.

In late 1989 or early 1990, the plaintiff became concerned that Curtis Pitts and Nate Wilkins had made improper expenditures of City money, made unauthorized telephone calls, opened unauthorized bank accounts, and otherwise failed or refused to comply with City procedures and ordinances. The plaintiff took his concerns to his supervisor, David Graversen, the Director of the Parks and Recreations Department. Graversen initially encouraged the plaintiff to investigate his concerns about the two employees. Snyder eventually met with the City Attorney's office and the City police about his suspicions and findings and requested a criminal investigation. In the spring of 1991, Snyder was told by the City Attorney's office that the mayor did not want to pursue a criminal complaint.

In February of 1991, Curtis Pitts filed a racial discrimination complaint alleging he was not treated the same as the white center directors.

Snyder later met with Graversen and was discouraged from continuing his investigation or disciplining of Pitts and Wilkins. Graversen instructed Snyder not to take disciplinary action against these employees based on what Snyder was alleging. Graversen told Snyder "that the mayor was not well liked by the black community and the mayor was afraid to cause a problem with the black community, and that he was not going to allow us—or not going to allow me [Snyder] to do anything about these activities." (Snyder Depo. at 24). Graversen warned Snyder that if he continued his efforts against Pitts and Wilkins that Snyder "would be the one who got burnt." (Snyder Depo. at 24).

In the plaintiff Snyder's work evaluations from 1989 through 1991, Graversen expressed some concerns about Snyder's commitment, availability and credibility or respect from the staff. Even so, Graversen always rated the plaintiff's performance in the different areas as satisfactory or commendable with one exception. In January of 1992, Graversen judged Snyder's insight, leadership and initiative in 1991 as at both the top end of needing improvement and the low end of satisfactory. It was during 1991 that the plaintiff initiated or attempted to initiate disciplinary charges against Pitts and Wilkins.

During the last part of 1991, Graversen decided that Snyder was not adequately supervising the Recreation so he split Snyder's responsibilities between Snyder and another employee, Doug Reynolds. He demoted Snyder to special facilities manager. As a

result of this demotion, Snyder was no longer in a position to supervise Pitts and Wilkins.

In May of 1992, Snyder was told that he would be transferred to the operations analyst position effective January 1, 1993. Graversen had decided that the split of supervisory responsibilities between Snyder and Reynolds was not working. So he proposed creating a superintendent of the Recreation Division position held by Reynolds and moving Snyder to an operations analyst position where he would have no supervisory responsibilities and would only work on Graversen's special projects. Snyder's transfer to the new position never occurred, for in September of 1992 Graversen told Snyder that budget constraints had forced the elimination of the operations analyst position for 1993.

Snyder did not contest the elimination of the analyst position through any grievance procedures. Snyder explains that he did believe a grievance remedy was available to him under the City of Topeka's Personnel Rules and Regulations. In support, the plaintiff cites Article VIII, Section 1G, which provides in pertinent part: "Layoffs ... necessitated by the conditions given in section 1A of this Article ["shortage of funds, lack of work, abolishment of a position or other material change in duties or organization"] shall not be subject to grievance...." The City's Director of Human Resources opines that an employee may use the grievance procedure if the employee believes the layoff occurred because of an unlawful retaliatory motive. In the pretrial order, the parties have stipulated that "[t]he City's policies and procedures do not allow for an employee to grieve and present evidence in support of continued employment where their separation is the result of a job elimination." (Dk. 28 at p. 9, ¶ f).

The plaintiff Snyder alleges the City had a policy or practice of protecting and giving preferential treatment to minority employees and of retaliating against other employees who pursued and investigated misconduct or city policy violations by minority employees. In support of that allegation, Snyder avers in conclusory fashion that the City used the same methods of poor evaluations, demotions, and job elimination against Dan Shaughnessy and Glenna Dehien under similar circumstances. In his deposition, Snyder testified that Graversen told him of a situation where Graversen had been reprimanded for pursuing what he thought was criminal activity in the Parks Department. The plaintiff's affidavit and deposition testimony regarding these other employees, specifically Shaughnessy and Dehien, lacks the necessary specifics and details regarding what the employees observed and reported and what the City did in response. Consequently, the court is unable to draw any inference that the City, as a matter of policy or practice, retaliated against these other individuals for any reason, let alone for a reason that resembles the one alleged by Snyder.

As the department head, Graversen knew the Mayor of Topeka looked to him to basically run the Parks Department. Graversen oversaw the disciplinary matters concerning Curtis Pitts and Nate Wilkins, he transferred Snyder on both occasions, and he recommended the department's reorganization and the elimination of the operations analyst position promised to Snyder. Graversen acknowledged in his deposition that he understood the City would want to be more cautious with discharging or even disciplining the two black employees, Pitts and Wilkins, who had been subject of the plaintiff's disciplinary investigation. Graversen further admitted that he knew the City would not want to mete out strict punishment against these same black employees unless everyone concerned was quite sure that it was necessary.

## MERITS

The defendant identifies the following three issues as presented by its motion: (1) Was the plaintiff's employment terminated in retaliation for him speaking out on matters of public concern in violation of his First Amendment right to free speech?; (2) Did the plaintiff's termination violate his 14th Amendment right to procedural due process?; and (3) Did the plaintiff's termination violate his 14th Amendment right to equal protection? The defendant organizes his arguments around these three issues. The court will follow the same format.

*First Amendment*

■ A State cannot discharge or demote a public employee on a basis that infringes the employee's constitutionally protected interest in free speech. *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 593, 596 n. 8 (10th Cir.1994). Stated another way, "[a] public employer may not condition employment or its incidents upon an employee's relinquishment of his or her First Amendment Rights." *Woodward v. City of Worland*, 977 F.2d 1392, 1403 (10th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). There are four steps in analyzing an employment retaliation claim based on the First Amendment:

> First, the court must determine that the employee's speech involves a matter of public concern. *Melton v. City of Okla. City*, 879 F.2d 706, 713 (10th Cir.1989), *modified on other grounds*, 928 F.2d 920 (10th Cir.) (en banc), *cert. denied*, [502 U.S. 906] 112 S.Ct. 296 [116 L.Ed.2d 241] (1991). Second, the court must "balance the interests of the employee in making the statement against the public employer's interests in the effective and efficient fulfillment of its responsibilities to the public." *Id.* (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568 [88 S.Ct. 1731, 1734, 20 L.Ed.2d 811] (1968)). Third, if the balancing test tips in favor of the plaintiff, then he must show "that the protected speech 'was a "motivating factor"' in the decision." *Id.* (citing *Mt. Healthy [City Sch. Dist. Bd. of Educ. v. Doyle]*, 429 U.S. [274] at 287 [97 S.Ct. 568, 576, 50 L.Ed.2d 471] [(1977)]). Fourth, if the plaintiff meets this burden, "the burden then shifts to the employer to show by a preponderance of evidence that it would have reached the same decision in the absence of the protected activity." *Id.* (citing *Mt. Healthy*, 429 U.S. at 287 [97 S.Ct. at 576]); *see also Powell v. Gallentine*, 992 F.2d 1088, 1090 (10th Cir.1993) (applying same four-step analysis).

*Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir. 1994). The first two steps involve questions of law for the court, but the last two steps involve questions of fact for the jury. *Powell v. Gallentine*, 992 F.2d 1088, 1090 (10th Cir. 1993).

The City concedes that Snyder's speech regarding Pitts and Wilkins qualifies as a matter of public concern. " 'When the content of speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern.' " *Walter v. Morton*, 33 F.3d 1240, 1243 (10th Cir.1994). The City takes no position on the balancing of interests called for in the second step. The City directs its summary judgment attack on whether the plaintiff's speech was a motivating factor in the City's decisions to demote Snyder and to eliminate the operations analyst position promised to him.

■ The plaintiff has the burden of proving his protected speech was a motivating factor in the City's decisions. *See Bisbee*, 39 F.3d at 1100. Generally, the issue of motivating factor is a factual determination in which a material issue of controverted fact will preclude summary judgment. *Schalk v. Gallemore*, 906 F.2d 491, 497 (10th Cir.1990). Retaliation is ultimately an issue of the defendant's motive or state of mind. *Ramirez*, 41 F.3d at 596. For that reason, it is " 'particularly difficult' " to have direct evidence as proof. *Id.* (quoting *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir.1990)). Circumstantial evidence is enough to prove an allegation of retaliation. *Bisbee*, 39 F.3d at 1101. Circumstantial evidence may include the defendant's knowledge of the plaintiff's protected activity, the temporal proximity between the adverse employment action and the protected activity, and the inadequacy or inconsistency of the defendant's reasons given for taking the adverse employment action against the plaintiff. *See, e.g., Ramirez*, 41 F.3d at 596; *Bisbee*, 39 F.3d at 1100–01.

■ The plaintiff has come forth with sufficient evidence from which a reasonable jury could infer a retaliatory motive for his demotions and eventual discharge. First, the plaintiff avers that Graversen warned him that his continuing efforts to investigate and discipline Pitts and Wilkins could jeopardize his own employment with the City. Though Graversen denies ever saying this, he did admit during his deposition that he

understood it was expected of him to proceed with more caution in disciplining and particularly in discharging these two employees because they were both black and leaders in the black community. The circumstances and the timing of the adverse action taken against the plaintiff, as evidenced by this record, supports an inference of an unlawful retaliatory motive. Despite only satisfactory or good marks on prior evaluations of his supervisory work, the plaintiff received his first· rating in the lowest category, "more effort ... needed," during the same period that he attempted to discipline Pitts and Wilkins. The plaintiff's demotion to special facilities manager prevented him from officially supervising and monitoring these two employees for misconduct. Finally, though Graversen told the plaintiff that he would be transferred to a new position of operations analyst, Graversen decided to eliminate that position even before the plaintiff assumed those duties. Graversen testified he eliminated that position because of budgetary constraints. Yet, the defendant has not made any attempt to show why Graversen believed the operations analyst position was expendable or why Graversen did not learn of his 1993 budget restrictions until after May of 1992. These facts, when considered as a whole, raise a reasonable inference of retaliation as a motivating factor. It is for the jury to decide whom they believe.

■ The City also argues an absence of evidence to support the plaintiff Snyder's allegation that the City has a custom or policy of retaliation. "Municipalities are 'persons' under § 1983 and can therefore be sued for their constitutional torts." *Sauers v. Salt Lake County,* 1 F.3d 1122, 1129 (10th Cir.1993) (citation omitted). A local government unit, however, is not liable under § 1983 on a respondeat superior theory for an employee's single misdeed. *Jantz v. Muci,* 976 F.2d 623, 630 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The Tenth Circuit has summarized municipality liability under § 1983 in these terms:

> [A] municipality is liable for the acts of its "final policymaking authority" and may also be liable for the actions of an employee who is not a final policymaking authority if a widespread practice exists to the end that there is a "custom or usage with the force of law," or a final policymaker ratifies a subordinate's recommendation, and the basis for it, thus rendering a final decision chargeable to the municipality.

*Butcher v. City of McAlester,* 956 F.2d 973, 977 n. 2 (10th Cir.1992) (citations omitted). "[T]o establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir.1993) (citation omitted).

■ The plaintiff Snyder does not present evidence from which a reasonable person could infer "a widespread practice that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Cannon v. City and County of Denver,* 998 F.2d 867, 877 (10th Cir.1993) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036) (quoting in turn *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). What Snyder offers is little more than his own conclusory allegations. The practice at issue here is the City retaliating against an employee who investigates and speaks out about a minority employee's misdeeds. Snyder's testimony about the other two or three instances omits the details necessary to substantiate the existence of a widespread and persistent pattern of retaliation. The City is entitled to summary judgment on the plaintiff's allegation that the City is liable on the theory that it had a custom or usage of retaliation under these circumstances.

■ The City's motion is silent on the alternative municipal liability theories that Graversen possessed final policymaking authority or that Graversen's recommendations

were ratified by a final policymaking authority. The plaintiff defended against summary judgment referring to both of these theories. The City filed no reply brief. As the party seeking summary judgment, the City must identify those portions of the record that demonstrate the absence of a genuine issue of material fact regarding these alternative liability theories. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the City did not carry this initial burden, the court denies the motion for summary judgment.

*14th Amendment—Procedural Due Process*

The plaintiff Snyder bases this claim on the City's Personnel Rules and Regulations which do not allow an employee to grieve or present evidence to dispute employment termination resulting from job elimination. Snyder alleges the City eliminated his promised job of operations analyst and, by force of these rules and regulations, deprived him of the right to grieve his separation. In other words, the plaintiff claims the City's failure to afford him the established grievance procedures violated his due process rights. The City argues that Snyder cannot show a property interest in continued employment, a denial of procedural due process, or a lack of adequate state court remedies.

■■■■ The Fourteenth Amendment prohibits a state from depriving a person of a property interest without due process of law. All procedural due process claims submit to a two-part inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.,* 39 F.3d 1131, 1135 (10th Cir.1994). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In a public employment setting, "the touchstone is whether,

under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it." *Farthing,* 39 F.3d at 1135 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709).

■■■■ In Kansas, "public employment is presumptively at-will," and an at-will employee " 'has no vested property interest' " in continued employment. *Farthing,* 39 F.3d at 1136 (quoting *Pilcher v. Board of County Commissioners,* 14 Kan.App.2d 206, 210, 787 P.2d 1204, 1208 (1990)). On the other hand, if the public employer's authority to remove an employee is conditioned upon "cause" or "fault," then the employee does have a protected property interest under Kansas law. *Farthing,* 39 F.3d at 1136 (citations omitted). A property interest can be "created by statute, ordinance, or implied or written contracts." *Pilcher,* 14 Kan.App.2d at 210, 787 P.2d 1204.

■■■■ The City argues the plaintiff Snyder has put forward no evidence, such as a city ordinance, to support his claimed property interest in continued employment. Snyder responds that the City's rules and regulations for city employees give rise to his property interest. Snyder singles out the definition of "benefit-eligible" position as one that is "regular (continuing on a year-around basis), and is approved for benefit eligibility on relevant personnel schedules.[1] The plaintiff next refers to the City's rules which give department heads the power "to remove an employee . . . at any time and for any reason during the initial probationary period." Article IV, Section 3E. The City's Rules at Article IX, Section 1 provide that department heads "serve at the pleasure of the Mayor and may be terminated without cause." In contrast, Section 2 of Article IX follows with this language:

A. *Policy.* The City reserves the right to discharge, suspend or otherwise discipline employees for violations of City and/or department rules and regulations. The disciplinary process involves four

---

1. The court fails to see how this language creates any definite term of employment. This definition of "benefit-eligible" is plainly meant only to distinguish between regular employment and seasonal or temporary employment.

steps of progressive discipline for infractions of a similar nature and which are of a nature not serious enough to constitute just cause for immediate suspension or termination....

Section 2 then describes the procedure for the progressive disciplinary system, lists the offenses that are not normally serious enough to justify immediate suspension or termination, and further lists examples of conduct that would be "just cause" for suspension or termination. "[T]hese rules and regulations imply just cause is required for the city to terminate its employees." *Jones v. City of Topeka,* 790 F.Supp. 256, 259 (D.Kan.1992). By implicitly limiting the City's authority to remove an employee to instances of just cause, these rules and regulations, in the court's judgment, are enough under Kansas law to create a protected property interest for City employees like Snyder.

█ In a most superficial fashion, the City argues that Snyder's due process claim is barred by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in that he could have pursued his right to grieve under the City's personnel rules or sued the City on a state tort claim of retaliatory discharge. The rule from *Parratt* is not nearly so broad or so simple as the City argues.

In *Parratt,* 451 U.S. at 538–39, 101 S.Ct. at 1914–15, and then later in *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), the Supreme Court held that adequate post-deprivation state remedies satisfy due process concerns for random, unauthorized deprivations of property. "The rationale behind this post-deprivation remedy rule is that it is impracticable, if not impossible, to provide a hearing before the deprivation caused by the random and unauthorized act of a state employee." *Mason v. Board of Educ., School Dist. No. 209,* 741 F.Supp. 879, 882 (D.Kan.1990); *see Winters v. Board of County Com'rs,* 4 F.3d 848, 857 (10th Cir.1993) ("In both *Hudson* and *Parratt,* the Court determined that no such opportunity for a predeprivation hearing was present and declared the postdeprivation remedies adequate."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1539, 128 L.Ed.2d 192 (1994). In employment termination cases, the State

is typically in a position to provide pre-deprivation process. *Anglemeyer v. Hamilton County Hosp.,* 848 F.Supp. 938, 940 (D.Kan. 1994); *Mason,* 741 F.Supp. at 882. There are no circumstances argued or presented here to justify swiftly terminating the plaintiff without any pre-deprivation process. The City's grievance procedures, in and of themselves, belie any purported interest the City may assert for expedient action here. "Thus, one of the fundamental rationales of *Hudson* and *Parratt,* the need for quick action, is absent from this case." *Wolfenbarger v. Williams,* 774 F.2d 358, 364 (10th Cir. 1985), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986); *see Winters v. Board of County Com'rs,* 4 F.3d at 857; *Mason,* 741 F.Supp. at 882. Moreover, the City has made no effort to show that the decision to terminate the plaintiff was a random and unauthorized act. *See Gillihan v. Shillinger,* 872 F.2d 935, 939 (10th Cir.1989) ("[W]hen the deprivation is not random and unauthorized, but is pursuant to an affirmatively established or *de facto* policy, procedure, or custom, the state has the power to control the deprivation and, therefore, generally must, in the absence of compelling reasons to the contrary, give the plaintiff a predeprivation hearing."); *Anglemeyer v. Hamilton County Hosp.,* 848 F.Supp. at 941; *Hartwick v. Board of Trustees of Johnson County Community College,* 782 F.Supp. 1507, 1513–14 (D.Kan.1992). In such an instance, it does not matter that an adequate post-deprivation remedy is available. *Gillihan,* 872 F.2d at 940; *see Smith v. Colorado Dept. of Corrections,* 23 F.3d 339, 340 (10th Cir.1994). The defendant has failed to show the applicability of the *Parratt/Hudson* doctrine. In sum, the defendant's arguments do not entitle it to summary judgment on the plaintiff's procedural due process claim.

### 14th Amendment—Equal Protection

The plaintiff's equal protection claim is not set forth with any specificity in the pretrial order. In his brief opposing summary judgment, the plaintiff sheds some light on what he is alleging under this legal theory. He alleges first that the "nexus" between the City's adverse employment decisions and "his attempts to" discipline the two black employ-

ees "is quite clear." (Dk. 39 at 22). He further alleges that "[n]o rational basis can be demonstrated for the disparity in treatment between the elimination of Plaintiff's position and the decision to retain two minority employees who were known to have violated clearly established rules and policies of the City." (Dk. 39 at 22). In short, the plaintiff appears to claim that the City treated him differently because of his whistleblowing efforts directed at two minority employees.

■ Equal protection analysis begins with determining the proper standard of review. "If governmental action 'does not affect a fundamental right or discriminate on the basis of a suspect classification, [the action is upheld] so long as it is rationally related to furthering a legitimate governmental interest.'" *Parks v. City of Warner Robins, Ga.,* 841 F.Supp. 1205, 1213 (M.D.Ga. 1994) (quoting *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567, 1574 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993)), *aff'd,* 43 F.3d 609 (11th Cir.1995). " 'The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.'" *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982) (quoting *Briscoe v. Kusper,* 435 F.2d 1046, 1052 (7th Cir.1970). A state's inconsistent administration or treatment, by itself, does not amount to a cognizable equal protection violation. *Shango,* 681 F.2d at 1104; *Lehpamer v. v. Troyer,* 601 F.Supp. 1466, 1470 (N.D.Ill.1985), *aff'd,* 787 F.2d 595 (7th Cir.1986) (Table). "[P]urposeful discrimination is an essential element of an equal protection violation." *Lewis v. City of Fort Collins,* 903 F.2d 752, 755 n. 1 (10th Cir.1990). This element has a specific meaning:

"'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279 [99 S.Ct. 2282, 2296, 60 L.Ed.2d 870] (1979). Rather, it implies that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* [*Lewis v. City of Fort Collins,* 903 F.2d 752, 755 n. 1 (10th Cir.1990)] (footnote omitted).

*Welsh v. City of Tulsa, Okl.,* 977 F.2d 1415, 1420 (10th Cir.1992). To prove an equal protection violation, the plaintiff must show that he was treated differently from other similarly situated employees and that but for his membership in the identifiable group he would not have been so treated. *See Hanton v. Gilbert,* 842 F.Supp. 845, 854 (M.D.N.C.), *aff'd,* 36 F.3d 4 (4th Cir.1994).

■ The plaintiff Snyder fails to identify with specificity the particular group or class of which he is a member and against which the City intended to discriminate. The court presumes Snyder considers that group to be those who blow the whistle on minority employees' misconduct. Both sides appear to agree the proper standard of judicial review is whether the City's actions are rationally related to a legitimate governmental interest. The City does not challenge Snyder's membership in such a group.

The City limits its summary judgment assault to the Snyder's proof that the City eliminated his position or took other adverse action because he was one of those who investigated and complained about a minority employee's misconduct. In short, the City simply repeats its factual challenge to Snyder's evidence that it also had advanced against his First Amendment claim. As the court said before, Snyder has raised genuine issues of material fact regarding the City's motive in the demotions and job elimination. For that reason, the City's argument is not one on which summary judgment can be granted.

IT IS THEREFORE ORDERED that the defendant City's motion for summary judgment (Dk. 33) is denied on all grounds except for the plaintiff's allegation that the City of Topeka is liable on the theory that it had a custom or usage of retaliating against those who investigate or speak out about a minority employee's misdeeds.